GEORGE H. LOMMEN v. MODERN LIFE INSURANCE COMPANY.
THEODORE N. OFSTEDAHL, INTERVENER.
KAY TODD, IMPLEADED PARTY.

THEODORE N. OFSTEDAHL v. MODERN LIFE INSURANCE COMPANY AND OTHERS.
JOHN E. BLOMQUIST AND KAY TODD, APPELLANTS.[1]

June 19, 1942.

No. 33,049.

[1]Reported in 4 N. W. (2d) 639.

See 206 Minn. 608, 289 N. W. 582.

*R. H. deLambert* and *Kay Todd, Jr.,* for appellants.

*Oscar Hallam* and *Cummins & Cummins,* for respondent Modern Life Insurance Company.

*A. B. Christofferson,* for respondent Theodore N. Ofstedahl.

LORING, JUSTICE.

There are two cases before us on this appeal. According to the respective plaintiffs, one will be referred to as the Lommen case and the other as the Ofstedahl case. The Modern Life Insurance

Company is a defendant in both. In the Lommen case, Ofstedahl has intervened and Kay Todd has been impleaded. In the Ofstedahl case, Kay Todd and John E. Blomquist are also defendants. Lommen, Todd, and Blomquist are appellants.

The Lommen case has been here before. Lommen v. Modern L. Ins. Co. 206 Minn. 608, 289 N. W. 582. It was an accounting action brought upon the theory that holders of so-called "charter" policies had not received their due share of earnings and profits for the year 1937 and on certain other transactions under the special participating provisions of those policies. The case was sent back for a new trial on one item of accounting which has now become immaterial. This court submitted to the trial court for consideration on the new trial the question whether the provisions for participation in the earnings of the company contained in the charter policies violated certain sections of the insurance laws of this state.

On the new trial the court held that the special participating provisions in the charter policies were illegal and discriminatory as against "non-charter" participating policies and decreed an accounting, the result of which subjected the future earnings of the "charter" policies to a lien in favor of the "non-charter" policies.

In the Ofstedahl case, the court set aside and vacated a judgment theretofore rendered in a case entitled "John E. Blomquist v. Modern Life Insurance Company" which had been assigned to Kay Todd.

The company commenced business in 1921 and until April 20, 1924, issued exclusively "charter" membership policies which contained special dividend provisions as follows:

"This Policy shall participate from the date of issue in all profits accruing to policies of this class, which will be composed of savings in mortality, interest in excess of reserve requirements, profit from lapses, savings by economy of management and divisible surplus from all other sources.

"Beginning at the end of the second year, and each year thereafter, the Company shall annually ascertain the divisible profits

which have accrued under this Policy and all like policies as a separate class. Payment of the first dividend shall be conditioned upon the payment of the premium for the succeeding year. From the profits so ascertained, 60% shall be apportioned for the second policy year and paid as a cash dividend, for the third year 70%, for the fourth year 80%, for the fifth year 90%, and thereafter the full amount thereof shall be so paid."

A few policies, called "charter membership replacement policies," were issued between April 20, 1924, and the year 1927, but they were in all respects the same as the charter policies theretofore issued. All these policies were 20-payment participating life insurance contracts and contained the special dividend clauses above quoted.

When the company discontinued issuing charter policies in 1927, it began the issuance of 20-payment life participating policies, which for convenience we will hereafter refer to as the "non-charter" policies. They did not contain the special dividend provisions which appeared in the charter policies, but contained the following provision:

"This policy shall participate in the distribution of surplus Profits of the Company as ascertained and apportioned by it, at the end of the second year, and annually thereafter. Payments of dividends as herein provided shall be contingent upon the payment of the following year's premium for only the first five policy years."

Since 1927 the company has issued ordinary life policies and nonparticipating contracts, but the trial court found that such issuance was not of effective importance in the controversy before it.

The plaintiff Lommen is the owner of a charter policy and brings this suit against the company in his own behalf and as a representative of, and in behalf of, all charter policyholders. After the case was sent back for a new trial, Ofstedahl intervened. In his complaint in intervention and in his main action, Ofstedahl sought relief as owner of a non-charter participating

20-payment life policy. He sued in behalf of all non-charter participating policyholders and attacked the validity of the special dividend provisions of the charter policies, asserting that the holders of such policies have received excess benefits by reason of those special provisions. He asked for an accounting to remedy the asserted discrimination and for such other relief as might be just.

The trial court found that the special dividend provisions of the charter policies require the payment of dividends to that class of policyholders on a more favorable basis than to the non-charter participating policyholders. It further found that in order to give effect to the dividend provisions of the charter policies it was necessary to prepare a plan or method whereby income and expense of the company would be allocated and distributed and accounts separated, set up, and maintained so as to show separately the funds allocable to the charter group and to the non-charter policyholders and all those interested in the company other than the charter group. It found that in 1929 the company developed a formula to give effect to the difference between the dividend provisions of the respective policies and that this formula was used and applied up to and including the year 1936. In effect, the company by this formula set up two insurance structures, one for the charter policies and one for all other policies, but pooled the investment and management of the funds of both structures.

In 1937, John E. Blomquist, a charter policyholder, brought a class suit in behalf of the charter policyholders against the company for an accounting. The basis of the action was the special dividend provisions of the charter policies, which Blomquist sought to enforce by requiring the company to make adjustment between the charter and the non-charter funds claimed to be due by proper application of the formula. This action resulted in a judgment, based upon a stipulation of the parties, which prescribed a new allocation formula to be used by the company in determining annually the profits of the charter group from and after January 1, 1937. The new formula included some changes beneficial to the

charter group with respect to the allocation of income and distribution of expense as between the charter and non-charter funds. The Blomquist judgment required the transfer by the company of funds from the non-charter to the charter fund. A second judgment in the Blomquist case provided for the payment of $7,711.60 to Blomquist for his expenses and attorney's fees, $4,599.48 of which has been paid and $2,767.98 deposited with the clerk of the district court to be disbursed in accordance with the further order of the court. The second judgment has been assigned to Kay Todd, the impleaded party herein, who is now the owner thereof. This is the judgment heretofore referred to as set aside and vacated by the trial court in the Ofstedahl case.

The trial court found that the question of the validity of the special dividend provisions of the charter policies was not challenged, raised, or litigated in the Blomquist case and that the non-charter policyholders were not represented therein. It also found that the effect of such provisions was to deprive the company of any right to retain the earnings of the charter policies after the fifth year for the purpose of accumulating surplus; that such provisions divested the board of directors of the right to exercise its discretion as to the portion of earnings accruing to the charter policies that should be paid as dividends; that such provisions prevent the accumulation of any surplus from earnings of the charter policies; and that all that remains in the charter fund after dividends have been paid is the amount necessary to cover the statutory reserve and such other items of liability as are specifically allocable to the charter policies.

The trial court also found that the dividend provision of the non-charter participating policy provided that beginning not later than the end of the second policy year the company would annually determine and account for the portion of divisible surplus accruing thereon; that under this provision the board of directors, after determining the earnings, might decide the portion thereof to be paid as a cash dividend; that the board might decide to pay part, all, or none as it might deem best for all concerned under

the conditions then existing; and that the portion of the earnings not distributed as dividends became a part of the surplus of the company available for payment of any unusual losses that might occur. It further found that the special provision of the charter policies gave to the charter policyholders benefits far more advantageous than are granted to the non-charter policyholders under the dividend clauses of their policies and that dividends are not paid on the same basis to the two groups of policyholders; that the charter policyholders are to be paid all of the earnings of each policy after the first five years, the non-charter only such part of the earnings as the company through its board directs to be paid; and that the difference in benefits to the two groups is substantial and has resulted in discrimination in favor of the charter policyholders in the payment of dividends by the company.

The court also found that the charter groups had benefited by the discrimination from the date of the issuance of the first policy in 1921 to and including December 31, 1939, in the sum of $68,654.63, which with simple interest at six per cent per annum to December 31, 1939, amounted in the aggregate to $112,021.91, calculated on a net cost basis, which the court found to be the proper, fair, and equitable measure of discrimination. For this amount plus an item of $5,188.71, later to be discussed, it imposed a lien on the earnings but not upon the principal amount of death benefits of the charter policies.

The principal question presented by this appeal is whether the special dividend provisions in the charter policies offend the statutes of this state and are discriminatory and therefore void.

1. Mason St. 1927, § 3389, which went into effect January 1, 1908, provides in substance that every life insurance company doing business in this state in which the policyholders are entitled to share in the profits or surplus shall make an annual apportionment and accounting of divisible surplus to each policyholder beginning not later than the end of the third policy year, and each such policyholder shall be entitled to be credited with or paid such portion of the entire divisible surplus as has been

contributed thereto by his policy. This section establishes the contribution method as a basis for the apportionment of dividends. Properly construed, we regard it as vesting in the directors of an insurance company a reasonable discretion as to how much of the earnings and profits shall be allocated to divisible surplus.

The special dividend provision of the charter policies required the company annually to ascertain the divisible *profits* "which have accrued under this policy and all like policies as a separate class" and after the fifth year to apportion the full amount of such profits to such charter policyholders. As to years prior to the sixth, it fixed the percentage to be distributed. As construed by the attorney general and by the officers of the company, this provision, if valid, left no discretion to the officers to retain any part of such profits after the fifth year for the purpose of building up a surplus. Nor did it leave any discretion to the board as to the percentage to be distributed in years prior to the sixth. Consequently, it was void as a violation of § 3389.

2. Evidently assuming the validity of the charter policy participating provisions, the officers, in 1929, set up a formula for separating the accounts and funds of the company as between the charter and non-charter groups of policyholders. This formula was made retroactive to the commencement of business by the company in 1921, and the accounts and funds were adjusted accordingly. Some slight change was later made in the formula, but it was not materially altered for subsequent business.

The application of this formula was found by the trial court to result in substantial discrimination in favor of the charter policies. Both the charter and non-charter participating policies were 20-payment life contracts, and the net premiums thereon were computed on the same mortality tables and interest assumptions. According to the record, the net premium on a policy is the amount which will pay the current mortality and meet the requirements of the statutory reserve. It does not include a margin for the expenses of the insurance company which are added to the net premiums to produce the gross premium charged for

the policy. The earnings of the policy from which dividends are paid consist largely of savings on mortality, interest earnings in excess of the assumed rate, and savings by economical management.

The trial court used net cost as the basis for determining the measure of discrimination between the charter and non-charter policies. Net cost is determined by deducting the dividends from the gross premiums. We think this was the correct basis for determining the discrimination here involved. By applying this measure to the policies here involved, the court found that the charter policies had been favored to the extent of $68,654.63, which with simple interest at six per cent to December 31, 1939, amounted to $112,021.91. The court made this sum, plus $5,188.71 theretofore advanced from the non-charter fund to the charter fund, a lien against the charter fund and the earnings of the charter policies, substituting for the future, dating from December 31, 1939, the statutory provision for the distribution of dividends in lieu of the illegal special dividend provisions of the charter policies. We regard the court's finding that there was a discrimination in fact in violation of Mason St. 1927, §§ 3376, 3377, as well founded. The evidence was ample. The fact that it was necessary to set up distinct funds for the two types of policies is very significant.

3. The trial court set up an elaborate plan for accounting and adjusting the discrimination between charter and non-charter participating policyholders of the company. It required the company to create an impounded dividend account on its books, to which should be credited the total of the dividends which may be declared to the holders of charter policies after the date of adjustment, December 31, 1939, until the lien shall have been satisfied. Of course there is no reasonable prospect that the lien will ever be paid in its entirety. It is calculated that the dividends accruing on the charter policies will never exceed $43,000 and may not reach more than half that sum. The mortality has reached a figure above 100 per cent of that assumed and is expected to in-

crease. It would unreasonably extend this opinion to discuss at length the plan of restitution evolved by the trial court along the lines we have indicated, but we have examined it with care and find none of the challenges to it well founded.

4. Contention is made that the item of $5,188.71 should not have been added to the $112,021.91 of lien imposed upon the charter policies. As we interpret the record, this item was what the charters had received over and above actual earnings of their policies. On that finding its inclusion is sustained. Under the separation of funds, it amounted to an impairment of the reserve allocated to the charter policies.

5. The further contention is made that the lien for the full amount of the discrimination should not be imposed on the policies in force but only the amount of preference which is chargeable to each policy now in force. This contention is largely academic, because, according to the actuarial figures, the lien against the surviving charter policies, under appellants' theory, would considerably exceed the earnings of those policies. Those policies are favored by exempting the death benefits from the lien. Upon the whole, we regard the trial court's solution of the adjustment of the charge against the charter policies as the most equitable one that could be made.

In view of what we have said, the setting aside of the Blomquist judgment was proper.

Appellants have made 103 assignments of error, but the foregoing expression of our views disposes of all questions meriting discussion.

In both cases the findings and conclusions are justified by the record.

The judgments are affirmed.